UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

_____

In re:

    East/Alexander Holdings, LLC,            Bankruptcy Case No. 22-20151-PRW
                                                    Chapter 11

                      Debtor.

_____

**DECISION AND ORDER
GRANTING MOTION TO LIFT THE
AUTOMATIC STAY UNDER 11 U.S.C. § 362(d)(2) AND
GRANTING MOTION EXCUSING COMPLIANCE WITH
11 U.S.C. § 543(a) & (b) UNDER 11 U.S.C. § 543(d)(1)**

PAUL R. WARREN, U.S.B.J.

      East/Alexander Holdings, LLC, owns three mixed-use commercial buildings in downtown Rochester, New York. The total value of those buildings is approximately $10,000,000, according to East/Alexander. M360 Community Development Fund, LLC, is East/Alexander's largest secured creditor, holding a mortgage and blanket lien on all assets to secure a debt of approximately $17,000,000. The only other secured creditors are state and local taxing authorities, whose claims represent a small fraction of East/Alexander's total secured indebtedness. The total amount of unsecured debt is $275,000. This is a classic two-party dispute. East/Alexander seeks, through Chapter 11, to stop a foreclosure action and regain control of its properties from a state court receiver, with the ultimate long-term goal of increasing the value of its properties and restructuring its debt. M360 requests relief from the automatic stay to allow it to proceed with the pending state court foreclosure action.

      From the outset of this case, the Court cautioned the Debtor about the difficulties inherent in single asset real estate cases and the challenges that make it almost impossible to produce a non-

consensual Chapter 11 plan that has a reasonable possibility of being confirmed under circumstances like those now before the Court. Despite the Court's urging that East/Alexander's time would be best spent seeking a consensual path out of its predicament, East/Alexander has pressed forward. The Court, therefore, turns its attention to the motions before it.

For the reasons that follow, the motion of M360, requesting relief from the automatic stay, under 11 U.S.C. § 362(d)(2), is **GRANTED**. The motion of the receiver, under 11 U.S.C. § 543(d)(1), to excuse compliance with 11 U.S.C. § 543(a) and (b), is **GRANTED**. East/Alexander's motion seeking the removal the state court receiver is denied as **MOOT**.

## I.

## JURISDICTION

The Court has jurisdiction under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (G). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## II.

## FACTS

On April 1, 2022, East/Alexander filed a Chapter 11 voluntary petition, initiating a flurry of activity stemming from a single critical fact in this case—East/Alexander operates a single asset real estate business, as defined under § 101(51B) of the Code. (ECF No. 1, Question 7). East/Alexander's real estate holdings, which comprise 95% of its total assets, consist of three commercial buildings in Rochester, New York—the Fitch Building at 360 East Avenue, the Sibley Building at 355-365 East Avenue, and the Valley Building at 333-351 East Avenue (the "Property"). (ECF No. 63, Official Form 206Sum & Sch. A/B, Question 55). In its schedules,

2

Case 2-22-20151-PRW, Doc 103, Filed 05/12/22, Entered 05/12/22 16:58:20, Description: Main Document , Page 2 of 13

East/Alexander values the Fitch Building, along with four associated parking lots, at $2,800,000. The Sibley Building and its single parking lot are valued at $3,500,000. The Valley Building and its parking lot are valued at $3,500,000. East/Alexander contends that the total value of its real property holdings is $9,800,000—"based upon purchase offers that East/Alexander has recently received."[1] (ECF No. 13 ¶ 13).

M360 is East/Alexander's largest creditor and sole mortgage-holder with respect to the Property, by virtue of a consolidated note and loan agreement entered into between the parties on July 29, 2019. (ECF No. 63, Sch. D; ECF Nos. 65-1 ¶ 5, 65-2, 65-3, 65-43). M360 provided a loan to East/Alexander with a maximum principal amount of $13,200,000. (ECF No. 13 ¶ 10; ECF Nos. 65-1 ¶ 6, 65-3 Ex. B). The terms of the loan established an August 1, 2022 maturity date, at which time East/Alexander is required to pay all unpaid principal, interest, fees and costs. (ECF Nos. 65-2 at 3, 65-3 at 2). East/Alexander used $11,950,00 of the loan to refinance existing mortgages. (ECF No. 13 ¶ 10). Additional disbursements totaling $1,250,000 were used to fund renovations in the Sibley Building. (ECF No. 13 ¶ 10; ECF No. 65-1 ¶ 7). East/Alexander's other secured debts consist of unpaid county and city property taxes.[2] (ECF No. 13 ¶ 12).

---

[1] The properties were appraised in June 2019, as part of the mortgage underwriting process conducted in connection with a loan between East/Alexander and M360. (ECF No. 13 ¶ 13 & Exhibits B-1, B-2 and B-3). The total value ascribed to the Property at that time was $17,100,000. (*Id.*). In August 2021, M360 had each of the buildings and associated parking lots appraised. The appraisals at that time totaled $8,550,000—with a prospective stabilized total value of $9,870,000, as of July 2022 for the Sibley Building, August 2022 for the Fitch Building, and August 2023 for the Valley Building. (ECF No. 65, Exhibits E, F, G).

[2] It is not entirely clear from East/Alexander's filings which real estate taxes remain unpaid. M360 asserts that, in February 2022, it advanced $481,525.41 for the payment of taxes and that East/Alexander continues to owe $245,522.12. (ECF No. 65-9 at 11).

Although East/Alexander contends that a decline in business resulting from the Covid-19 pandemic caused it to become delinquent on its secured debt, it appears that East/Alexander's initial default under the loan occurred shortly after loan closing—six months *before* the pandemic began. (ECF No. 13 ¶ 3; ECF No. 65-1 ¶ 10). East/Alexander failed to timely make the loan payment that was due on September 1, 2019. (ECF No. 65-1 ¶ 10). Payments due in December 2019, as well as January and February 2020, were made from a debt service holdback account which was then depleted. (*Id.*). In May 2020, East/Alexander and M360 entered into an agreement establishing a fourteen-month forbearance period. (*Id.* at ¶¶ 11, 12). Following the end of the forbearance period, East/Alexander defaulted by failing to make all but a single payment from August 1, 2020 to the present. (*Id.* at ¶ 12).

M360 initiated a state court foreclosure action in February 2021, but a foreclosure moratorium prevented that action from proceeding. (ECF No. 65-1 ¶ 13). M360 filed an amended complaint in October 2021. (*Id.* at ¶ 14). On January 20, 2022, a state court order appointing a receiver was entered, turning over management of the Property from East/Alexander's management company, Big Crow North Management, Inc., to Wendy Dworkin. (ECF No. 13 ¶ 15; ECF No. 65-1 ¶ 14). On April 1, 2022—eleven days before the return date on a state court order to show cause prompted by the receiver's allegations of noncompliance with the order appointing the receiver—East/Alexander filed its Chapter 11 petition, preventing the state court foreclosure action from proceeding. (ECF No. 65-1 ¶ 15).

4

## III.

## DISCUSSION

**A. <u>M360's Motion for Relief from the Automatic Stay</u>**

Under 11 U.S.C. § 362(d), the court, after notice and hearing, shall grant a party in interest's request for relief from the automatic stay in various circumstances. Under § 362(d)(1), relief may be sought "for cause, including the lack of adequate protection of [the interested party's] interest in the property. 11 U.S.C. § 362(d)(1). Relief may also be requested under § 362(d)(2) if "the debtor does not have an equity in [the] property" and if the "property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2). Under § 362(g)(1), the party seeking stay relief bears the burden of proof on the issue of the debtor's equity in the property. The party opposing stay relief has the burden of proof on all other issues. 11 U.S.C. § 362(g)(2).

**1. *East/Alexander Holdings, LLC, Lacks Equity in its Real Estate Assets***

M360 bears the burden of establishing that East/Alexander lacks equity in the Property covered by the loan. 11 U.S.C. § 362(g)(1). A debtor has no equity in its property when the debts secured by liens on the property exceed the property's value. *In re Manning*, 620 B.R. 199, 205 (Bankr. W.D.N.Y. 2020) (Warren, J.); *see also In re Elmira Litho, Inc.*, 174 B.R. 892, 900-01 (Bankr. S.D.N.Y. 1994). The value of the property relevant to a court's consideration of whether to grant stay relief is the property's value as of the date of the hearing on the motion for relief from stay. *In re Windham Mills Dev. Corp.*, Case No. 04-23619, 2008 Bankr. LEXIS 1126, at *7 (Bankr. D. Conn. Apr. 8, 2008).

M360 contends that, as of the date of the bankruptcy filing, the amount due under the note and loan agreement, exclusive of attorneys' fees and costs, was $16,897,551.61. (ECF No. 65-1 ¶ 19). East/Alexander scheduled M360's secured claim as $14,000,000. (ECF No. 63, Sch. D). Both parties provide similar values for the Property. M360's appraisals from July/August 2021

5

valued the Property at $8,550,000—with a prospective stabilized total value of $9,870,000. (ECF No. 65, Exhibits E, F, G). East/Alexander lists a value of $9,800,000 for the Property in Schedule A/B of the petition. (ECF No. 63, Sch. A/B). East/Alexander does not dispute that it has no equity in the Property and that M360's claim is undersecured—by at least $4,000,000—at this time.

The Court finds that M360 has satisfied its burden of proof under § 362(g)(1). The first prong under § 362(d)(2)(A) has been established. The Court turns its attention to the second prong—whether the property is necessary to an "effective reorganization." The burden of proof on that issue lies with East/Alexander. 11 U.S.C. § 362(g)(2).

### 2. *East/Alexander Has Not Demonstrated the Existence of a Reorganization That Is In Prospect*

Once a movant establishes that the debtor has no equity in the property, the burden then shifts to the debtor to establish that the property at issue is necessary to an effective reorganization. In *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 108 S. Ct. 626, 98 L. Ed. 2d 740 (1988), the Supreme Court provided clarity on the debtor's obligation under § 362(d)(2)(B). In *Timbers*, the Supreme Court held that what § 362(d)(2)(B) requires is "not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect*." *Id.* at 375-76 (emphasis in original). "This means . . . that there must be a 'reasonably possibility of a successful reorganization within a reasonable time.'" *Id.* at 376 (citation omitted). Relief under § 362(d)(2)(B) is required where there is a "*lack of any realistic prospect of effective reorganization*." *Id.* (emphasis added).

East/Alexander asserts that § 362(d)(3) is the "operative provision" for the Court to consider with regard to M360's request for stay relief. (ECF No. 92 ¶ 4). East/Alexander states that any attempt to have the stay lifted under § 362(d)(1) or (d)(2) is misguided "[s]ince the

6

Case 2-22-20151-PRW, Doc 103, Filed 05/12/22, Entered 05/12/22 16:58:20, Description: Main Document , Page 6 of 13

Debtor's real property, which is subject to the lien of M360, is its only income producing asset, such property is clearly 'necessary' to *any* effective reorganization." (*Id.* at ¶ 5). Of course, to accept East/Alexander's position would require the Court to ignore the words "that is in prospect" from the Supreme Court's interpretation of the statute—and would effectively mean stay relief could never be granted under § 362(d)(2) in a single asset real estate case. East/Alexander seems to suggest that the Court cannot entertain a lift stay motion under § 362(d)(1) or (2) until the time limits have passed under § 362(d)(3). There is no support for that proposition offered by East/Alexander. East/Alexander's opposition focuses heavily (almost exclusively) on the timing of the motion to lift stay, essentially alleging that it is rare for a court to lift the stay in a single asset real estate case less than four months after the filing of the case.[3] (ECF No. 97 at 12).

---

[3] On April 26, 2022, the Court entered a Case Management Order requiring that written opposition to the motion for relief from stay be filed on or before Friday, May 6, 2022, at 12:00 P.M. (ECF No. 78). East/Alexander ignored the Court's Order and filed opposition at 2:56 P.M. on May 6. (ECF No. 92). East/Alexander's opposition consisted of conclusory statements unsupported by any citation to legal authority. On Sunday, May 8, 2022, at 1:53 A.M., East/Alexander filed a memorandum of law in opposition to the motion to lift stay. (ECF No. 97). The Court's Case Management Order, as entered, allowed sufficient time for East/Alexander to file timely written opposition to the motion to lift stay. East/Alexander offers no excuse or apology for its untimely filed opposition.

Apart from being late-filed, the Court finds East/Alexander's efforts to distinguish the facts of this case from the cases cited in its memorandum of law misleading. In support of its opposition, East/Alexander cites this Court's decision in *In re Encore Prop. Mgmt.*, 585 B.R. 22 (W.D.N.Y. 2018) (Warren, J.). East/Alexander summarized this Court's findings of bad faith in *Encore* and then alleged that almost none of those factors are present in this case. East/Alexander's characterizations of the indicators of bad faith in this case, as compared to *Encore*, are at best sloppy—at worst, they are intentionally misleading. For example, East/Alexander alleges that it does not have only one asset, "it owns three (3) distinctly separate conglomerations of real property, comprising four (4) buildings and multiple parking lots." (ECF No. 97 at 15). Similarly, in *Encore*, the assets at issue were a "portfolio of properties" (many times larger than the Property here) subject to the lien of a single mortgage holder. *Encore*, 585 B.R. at 31. Additionally, East/Alexander contends that its financial condition is not a two-party dispute because it "owes unsecured debt in the amount of $275,000 *which is not insignificant*." (ECF No. 97 at 15).

The existence of § 362(d)(3) does not preclude the Court from exercising its authority to fashion appropriate relief in single asset real estate cases when sought under § 362(d)(1) or (d)(2). One court has equated the analysis under § 362(d)(2)(B) to a sliding scale. *In re Holly's, Inc.*, 140 B.R. 643, 699 (Bankr. W.D. Mich. 1992). The level of scrutiny the Court applies to a debtor's arguments in opposition to stay relief is dependent upon the stage of the case. *In re RYYZ, LLC*, 490 B.R. 29, 36 (Bankr. E.D.N.Y. 2013) (citing *Holly's*, 140 B.R. at 699). Early in a case, a debtor need only produce enough evidence to demonstrate that the possibility of a successful reorganization is "plausible." *Holly's*, 140 B.R. at 701. "[T]he debtor's plan can be somewhat obscure or vague as long as it is plausible that successful reorganization may occur." *Id.* Analysis under § 362(d)(2)(B) need not include analysis of an actual plan. *RYYZ*, 490 B.R. at 36. But the burden of demonstrating plausibility lies with a debtor; plausibility cannot simply be assumed merely because the case is in the early days. Here the case has proceeded well beyond the early days.

Invoking, without citation, plan confirmation standards under § 1129, East/Alexander asserts that "[t]he fact that M360 controls the class of unsecured creditors is not determinative." (ECF No. 92 ¶ 7). Pointing to secured debt owed to the City of Rochester and Monroe County, as well as two creditors who debts are secured by mechanics liens, East/Alexander insists that the Court cannot determine whether East/Alexander will be able to obtain acceptance of a Chapter 11 plan by a class of impaired creditors other than M360.[4] (*Id.*; *see also* ECF No. 97 at 12).

---

Whether or not the amount of the unsecured debt in this case is "insignificant" is a legal determination. East/Alexander's unsupported legal conclusions fail to advance East/Alexander's position.

[4] East/Alexander cites *In re Greenwood Point, LP*, 445 B.R. 885 (Bankr. S.D. In. 2011) for the proposition that "[c]laims of municipalities for real property taxes may be classified as an

8

Additionally, East/Alexander expresses optimism in its ability to increase the value of its Property and thereby reduce or eliminate M360's unsecured claim altogether. (*Id.* at 3-4). But no evidence is offered by East/Alexander to justify its optimism. In fact, at oral argument East/Alexander offered cash flow projections (not included among the late-filed papers) which projections pointed to a monthly shortfall of at least $10,000. East/Alexander simply shrugged off that shortfall as no big deal. On the other hand, M360 convincingly argued that East/Alexander would need to make monthly payments of between $70,000 and $140,000 to M360 just to pay the secured portion of its claim under a plan—an amount greatly in excess of East/Alexander's overly optimistic and unsupported projections.

Under § 1129 of the Code, confirmation of a Chapter 11 plan proceeds along one of two paths. Consensual confirmation, under § 1129(a), requires the consent of each impaired class. In the absence of consent, under § 1129(b)—the cramdown provision—the Court must confirm a plan if it "does not discriminate unfairly" and is "fair and equitable" with respect to dissenting impaired classes. Section 1129(b) permits confirmation so long as at least one impaired class votes to accept the plan. *See* 11 U.S.C. § 1129(a)(10).

The overwhelming hurdle East/Alexander faces is M360's clearly stated intention to oppose any potential plan of reorganization proposed by East/Alexander. (ECF No. 65-9 at 3). As this Court has previously reminded the East/Alexander, in *Boston Post Road Limited Partnership*

---

impaired class of claims for purposes of confirmation of a plan." (ECF No. 97 at 12). *Greenwood* addresses the treatment of secured tax claims and unsecured priority tax claims and what constitutes impairment of those claims—*in the Seventh Circuit*. *Greenwood*, 445 B.R. at 905-09. East/Alexander fails to address impairment of city and county tax claims *in the Second Circuit*— or relevant authority relating to "artificial" impairments, which can operate as a roadblock to confirmation where a debtor is unable to obtain acceptance of the plan by a class of claims in satisfaction of § 1129(a)(10) of the Code.

9

*v. FDIC (In re Boston Post Road Ltd. P'ship)*, 21 F.3d 477 (2d Cir. 1994), *cert denied* 513 U.S. 1109, 115 S. Ct. 897, 130 L. Ed. 2d 782 (1995), the Second Circuit stated that:

> A key premise of the Code is that creditors holding greater debt should have a comparably greater voice in reorganization. . . . Chapter 11 is far better served by allowing those creditors with the largest unsecured claims to have a significant degree of input and participation in the reorganization process, since they stand to gain or lose the most from the reorganization of the debtor.

*Boston Post Road*, 21 F.3d at 483. *See also In re 18 RVC, LLC*, 485 B.R. 492, 495-96 (Bankr. E.D.N.Y. 2012). Despite East/Alexander's vague assertions concerning two holders of mechanics liens—totaling a mere $20,823.64 (Claim Nos. 2 & 3)—and City of Rochester and Monroe County tax debt, what remains here is a two-party dispute between East/Alexander and M360. Any attempt by East/Alexander to fashion a Chapter 11 plan that disenfranchises M360—the holder of the overwhelmingly largest claim in this case—would not pass muster under 11 U.S.C. § 1129(b).

Faced with M360's clearly stated opposition, East/Alexander's ambiguous forecasts of a potentially confirmable plan do not satisfy East/Alexander's burden of proof to demonstrate that an effective reorganization is in prospect. Quite the opposite—East/Alexander simply argues that it is too soon in the case to consider stay relief. Particularly where, as here, East/Alexander's business is "single asset real estate," encumbered by a lien held by a single creditor with a substantial unsecured deficiency claim, the size of which leaves it with an unsecured claim that will completely dominate an unsecured creditor class, the Court can see no prospect for a successful reorganization within a reasonable time. This bleak situation is exacerbated by the looming shadow of the absolute priority rule, making the prospect for an effective reorganization remote, at best.[5] At oral argument, consistent with its refrain concerning the age of this case,

---

[5] It is notable that East/Alexander completely ignores any mention of the absolute priority rule, codified under 11 U.S.C. § 1129(b)(2)(B)(ii), in its opposition. Under the absolute priority rule, "a dissenting class of unsecured creditors must be provided for *in full* before any junior class

counsel responded to the Court's inquiry concerning the absolute priority rule dilemma for East/Alexander by saying it was too early in the case to worry about the rule. But the presence of the absolute priority rule in this case points to the absence of "an effective reorganization that is in prospect." And, the wait and see approach urged by East/Alexander does not satisfy its burden of proof under 11 U.S.C. § 362(g)(2).

That statute commands that if the Court finds that the movant has established grounds for stay relief under either § 362(d)(1) or § 362(d)(2), the Court "shall grant relief from the stay." 11 U.S.C. § 362(d). "There is, however, no requirement that the Court address the issue of adequate protection, under § 362(d)(1), if the Court finds that grounds for termination of the stay have been demonstrated under § 362(d)(2)." *In re Manning*, 620 B.R. 199, 204 (Bankr. W.D.N.Y. 2020) (Warren, J.) (citing *In re de Kleinman*, 156 B.R. 131, 136 (Bankr. S.D.N.Y. 1993)). Here, the Court finds that East/Alexander has no equity in its Property. East/Alexander conceded that fact at oral argument. The Court also finds that the Property is not necessary for an effective reorganization that has a realistic possibility of success. The Court holds that M360 has satisfied its burden of proof under § 362(d)(2)(A) and § 362(g)(1) of the Code. The Court further holds that East/Alexander has failed to carry—or attempt to shoulder—its burden of proof under § 362(d)(2)(B) and § 362(g)(2). Therefore, the Court must lift the stay under § 362(d)(2). As a

---

can receive or retain any property under a reorganization plan." *In re RYYZ, LLC*, 490 B.R. 29, 44 (Bankr. E.D.N.Y. 2013) (emphasis added) (internal quotation marks and citation omitted). The Court assumes that East/Alexander's equity holders will seek to retain their interest in East/Alexander. To retain their interest, M360's claim (and all the other claims) would need to be paid in full, with interest, before the current owners of East/Alexander receive or retain any property. Alternatively, the current equity holders would need to contribute substantial "new value" at least equal to the value of the interest they retain. *Id.* at 44-45. This presents a serious roadblock to the potential confirmation of any plan East/Alexander may propose, in which the equity security holders retain their interest in East/Alexander.

11

result, the Court need not address the issue of whether cause has been established under § 362(d)(1).

**B. The Receiver's Motion to Excuse Compliance with 11 U.S.C. § 543(a) and (b) is Granted**

On April 18, 2022, the receiver filed a motion, under 11 U.S.C. § 543(d)(1), seeking to excuse compliance with § 543(a) and (b) and continue as custodian of the Property. (ECF No. 40). M360, the United States Trustee and East/Alexander all filed responses to the motion. (ECF Nos. 55, 57, 59, 60). On April 26, 2022, a hearing was held on the motion, at which time the Court deferred ruling on the receiver's motion until the lift stay motion could be heard. The court ordered that the receiver remain in control of the Property on an interim basis, to preserve the *status quo* and to protect M360's interest in its cash collateral.

With termination of the stay, it would make no sense to displace the state court appointed receiver in favor of East/Alexander's management company. That would surely result in havoc during the week or two that it would take the state court to reinstall the receiver. The Court's determination to lift the stay effectively ends this case—sending the parties back to state court. It is fair to predict that a motion to dismiss this case will be forthcoming. Acting in comity with the state court, and in the exercise of the Court's discretion under 11 U.S.C. § 105(a) to continue to preserve the *status quo*, the relief sought by the receiver under 11 U.S.C. § 543(d)(1), is **GRANTED**. Accordingly, East/Alexander's motion seeking the removal of the state court receiver is denied as **MOOT**.[6]

---

[6] At the hearing on April 26, 2022, the Court denied East/Alexander's motion to use cash collateral, without prejudice, pending the outcome of M360's motion to lift the stay. On May 6, 2022, East/Alexander filed a "Cross-Motion Pursuant to Rule 9024 to Renew Motion for Authority to Use Cash Collateral." (ECF Nos. 92, 93). The "cross-motion" consisted of a declaration incorporating, by reference, various documents filed by East/Alexander on the Court's docket. (ECF No. 92). Apart from citation to Rule 9024 FRBP in the title of the "cross-motion," no

12

## IV.

## CONCLUSION

For the reasons stated above, the motion of M360 to terminate the automatic stay, under 11 U.S.C. § 362(d)(2), is **GRANTED**. The motion of the receiver, under 11 U.S.C. § 543(d)(1), to excuse compliance with 11 U.S.C. § 543(a) and (b), is **GRANTED**. East/Alexander's motion seeking the removal of the state court receiver is denied as **MOOT**.

**IT IS SO ORDERED.**

DATED: May 12, 2022                  _____/s/_____
      Rochester, New York              HON. PAUL R. WARREN
                                                          United States Bankruptcy Judge

---

reference was made to the standard for relief under that Rule. Additionally, the notice of cross-motion indicated a hearing date of May 11, 2022—five days after filing of the "cross-motion." (ECF No. 93). Absent a request to shorten time, the "cross-motion" was not filed with sufficient noticing time under Rule 9006 FRBP. Accordingly, the Court has not taken up consideration of the "cross-motion." However, because the stay is being lifted and the receiver is being left in control of the property, the untimely "cross-motion" is effectively being denied as moot.

13